FILED
United States Court of Appeals
Tenth Circuit

July 25, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

—————————————————

THI OF NEW MEXICO AT VIDA
ENCANTADA, LLC,

     Plaintiff - Appellant,

v.

No. 16-2041

MARY LOUISE LOVATO, as personal
representative for the wrongful death estate
of Guadalupe Duran, deceased,

     Defendant - Appellee.

—————————————————

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:11-CV-00634-MV-KK)**

—————————————————

Lori D. Proctor, Cooper & Scully, P.C., Houston, Texas, for Plaintiff-Appellant.

Jennifer J. Foote (Dusti D. Harvey with her on the brief), Harvey and Foote Law Firm, LLC, Albuquerque, New Mexico, for Defendant-Appellee.

—————————————————

Before **HOLMES**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

—————————————————

**PHILLIPS**, Circuit Judge.

—————————————————

     Under the Federal Arbitration Act (FAA), we may vacate an arbitrator's

decision "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*,

133 S. Ct. 2064, 2068 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 942 (1995)). "That limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'" *Id.* (alteration in original) (quoting *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Section 10(a) of the FAA delineates the four "very unusual circumstances" for vacating arbitration awards. *Oxford Health Plans LLC*, 133 S. Ct. at 2068; *see* 9 U.S.C. § 10(a). Here, we consider whether an arbitrator exceeded his authority under § 10(a)(4) and whether he manifestly disregarded the law in awarding certain costs and fees to the prevailing party. Under our restrictive standard of review, we conclude that the arbitrator did not exceed his authority or manifestly disregard the law. So we affirm.

## I

### 1. Standard of Review

In assessing the district court's confirmation of the arbitration award, "we review legal questions de novo and factual findings for clear error." *CEEG (Shanghai) Solar Sci. & Tech. Co. v. LUMOS LLC*, 829 F.3d 1201, 1205 (10th Cir. 2016). "An error is clear 'if the district court's findings lack factual support in the record or if, after reviewing all the evidence, we have a definite and firm conviction that the district court erred.'" *Id.* at 1205-06 (quoting *Middleton v. Stephenson*, 749 F.3d 1197, 1201 (10th Cir. 2014)).

Though "[w]e do not owe deference to the district court's legal conclusions," we "afford maximum deference to the arbitrators' decisions." *Id*. at 1206 (emphasis

2

omitted). Our task is to assess whether the district court correctly followed the restrictive standard that governs judicial review of an arbitrator's award:

> "[W]e must give *extreme deference* to the determination of the [arbitrator] for the standard of review of arbitral awards is *among the narrowest known to law*." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) . . . . "By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L.Ed.2d 26 (1991).

*Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (emphasis added). So our review is extremely limited. *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005). In addition, we have emphasized that a court should exercise "great caution" when a party asks for an arbitration award to be set aside. *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).

The Supreme Court has emphasized that "only . . . extraordinary circumstances" warrant vacatur of an arbitral award. *San Juan Coal Co. v. Int'l Union of Operating Eng'rs, Local 953*, 672 F.3d 1198, 1201 (10th Cir. 2012) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam)).The Court has also said that if "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987); *Oxford Health Plans LLC*, 133 S. Ct. at 2068 (describing "the sole question" for courts as "whether the arbitrator (even arguably) interpreted the parties'

3

contract, not whether he got its meaning right or wrong"). Even so, "[t]he arbitrator may not ignore the plain language of the contract." *Misco*, 484 U.S. at 38.

In practice, courts "are 'not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.'" *CEEG*, 829 F.3d at 1206 (quoting *Misco*, 484 U.S. at 36); *see also ARW Expl. Corp.*, 45 F.3d at 1463 ("Even erroneous interpretations or applications of law will not be disturbed."). "The arbitrator's construction holds, however good, bad, or ugly." *Oxford Health Plans LLC*, 133 S. Ct. at 2071.

Any "less deference would risk 'improperly substitut[ing] a judicial determination for the arbitrator's decision that the parties bargained for.'" *San Juan Coal Co.*, 672 F.3d at 1201 (alteration in original) (quoting *Major League Baseball Players Ass'n*, 532 U.S. at 509). It would also create a system in which "arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans LLC*, 133 S. Ct. at 2068 (quoting *Hall Street Assocs.*, 552 U.S. at 588).

2.      **Grounds for Reversal**

Alongside this highly deferential standard of review, the law sets a high hurdle for reversal of an arbitral award. Enforcing the "strong federal policy favoring arbitration," this court has required parties seeking to set aside an arbitration award to establish a statutory basis or a judicially created exception for doing so. *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001); *see Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, 567 (10th Cir. 2010). Aside from

4

these "limited circumstances," § 9 of the FAA requires courts to confirm arbitration awards. *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997) (citing 9 U.S.C. § 9).

Section 10(a) of the FAA, 9 U.S.C. § 10(a), delineates four statutory grounds for vacating arbitral awards—grounds that require very unusual circumstances. *Oxford Health Plans LLC*, 133 S. Ct. at 2068. The first three grounds encompass various types of "corruption, fraud, or undue means" and arbitrator misconduct. 9 U.S.C. § 10(a)(1)-(3). The fourth ground, which is the only ground that THI of New Mexico at Vida Encantada (THI) invokes, applies "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

A party seeking relief under § 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC*, 133 S. Ct. at 2068. "[C]onvincing a court of an arbitrator's error—even his grave error—is not enough." *Id.* at 2070. "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). Thus, in considering whether the arbitrator exceeded his powers, we consider one question: whether the arbitrator arguably interpreted the parties' contract, regardless of whether that interpretation was correct. *Id.*

To supplement these statutory grounds, we have recognized a judicially created exception to the rule that even an erroneous interpretation or application of

5

law by an arbitrator is not reversible. *See Denver & Rio Grande W. R.R.*, 119 F.3d at 849 (explaining that "a handful of judicially created reasons" to reverse an arbitrator's decision have emerged over the years). For instance, this court has held that "manifest disregard of the law"—which requires "willful inattentiveness to the governing law"—is subject to reversal. *ARW Expl. Corp.*, 45 F.3d at 1463 (quoting *Jenkins v. Prudential–Bache Sec. Inc.*, 847 F.2d 631, 634 (10th Cir. 1988)). "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "To warrant setting aside an arbitration award based on manifest disregard of the law, 'the record must show that the arbitrators knew the law and explicitly disregarded it.'" *Hollern v. Wachovia Secs., Inc.*, 458 F.3d 1169, 1176 (10th Cir. 2006) (quoting *Dominion Video Satellite*, 430 F.3d at 1274).[1]

## II

With this framework in mind, we turn to the facts of this case. In May 2007, ninety-two-year-old Guadalupe Duran was admitted to THI of New Mexico at Vida Encantada, LLC, a nursing home in Las Vegas, New Mexico, to obtain nursing-home

[1] This exception's viability has been uncertain, however, since the Supreme Court's decision in *Hall Street*. There, the Court questioned whether "manifest disregard" names a new ground for review or refers to the § 10 grounds collectively. 552 U.S. at 585. It then emphasized that "expanding the detailed categories would rub too much against the grain of the § 9 language, where provision for judicial confirmation carries no hint of flexibility." *Id.* at 587; *see also Abbott v. Law Office of Patrick J. Mulligan*, 440 F. App'x 612 (10th Cir. 2011) (unpublished) (explaining the uncertainty as to whether manifest disregard is still a viable ground to overturn an arbitration award after *Hall Street*).

care. During her stay at THI, Ms. Duran fell several times. During one fall, she broke her femur and hip. She suffered a stroke soon after undergoing surgery for her injuries. Less than five months after admission, Ms. Duran died while in THI's care.

Before admitting Ms. Duran to THI, her daughter and personal representative, Mary Ann Atencio, executed on her behalf an Admission Agreement and an Arbitration Agreement. In the Arbitration Agreement, the parties agreed to submit to "arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association," and to allow an arbitrator to resolve "any Dispute(s)" between them, including "any controversy or dispute . . . arising out of or relating to" the Admission Agreement or "the provision of care or services to" Ms. Duran, and "all issues pertaining to the scope of" the Arbitration Agreement. Appellant's App. Vol. 1 at 43. The Arbitration Agreement also said that it "shall be governed by and interpreted under the [FAA]." *Id.*

Acting on behalf of Ms. Duran's estate, Mary Louise Lovato, Ms. Duran's granddaughter and the personal representative of the estate, sued THI (and others who are not parties to this appeal) in New Mexico state court for wrongful death and other tort claims. In response, THI filed a motion in federal court to compel arbitration, which the district court granted over Ms. Lovato's opposition. *THI of N.M. of Vida Encantada, LLC v. Lovato*, 848 F. Supp. 2d 1309, 1334-35 (D.N.M. 2012).

After his appointment, the arbitrator requested a copy of the Arbitration Agreement and sought clarification as to whether the New Mexico Uniform

7

Arbitration Act (NMUAA) governed the dispute: "I would like to receive a copy of the written agreement to arbitrate which controls this process. I am assuming that the Arbitration is covered by the Uniform Arbitration Act of New Mexico. If that assumption is not correct would you please advise me of your respective positions?" Appellant's App. Vol. 2 at 219. The arbitrator received a copy of the Arbitration Agreement, though the timing of receipt is not evident from the record. Neither party responded to his inquiry about the NMUAA's applicability.

The parties participated in a four-day arbitration, at which Ms. Lovato prevailed on the wrongful-death claim. The arbitrator awarded her $475,000 in compensatory damages and authorized a post-arbitration motion for further relief and costs. After extensive briefing by the parties concerning Ms. Lovato's Post-Arbitration Motion for Fees and Costs, the arbitrator awarded Ms. Lovato an additional $245,462.75: $62,100.89 in costs and expenses, which included $39,051.25 in arbitrator's fees (half of the total fees of $78,102.49); $170,087.98 in pre-judgment interest; and $13,273.88 in post-judgment interest, with additional post-judgment interest continuing to accrue from the date of the award.

THI filed a motion in district court to vacate or modify the arbitrator's award, and Ms. Lovato filed a motion to confirm it. The district court upheld the award. THI appealed, challenging only the confirmation of the costs and interest award.[2]

---

[2] During appellate briefing, THI conditionally withdrew its challenge to paying Ms. Lovato's half-share of the arbitrator's fees ($39,051.25), which is included within that award, because it had agreed to pay those fees in its motion to compel

8

## III

The district court applied the "maximum deference" standard of review within the framework of § 10(a)(4) of the FAA and appropriately deferred to the arbitrator in confirming the award of costs and interest. *CEEG*, 829 F.3d at 1205. The district court correctly stated that "irrespective of whether the Court concurs with the Arbitrator's interpretation of the underlying arbitration agreement, it is obvious that the Arbitrator here construed the relevant contract." Appellant's App. Vol. 2 at 332. The arbitrator did so when he reasoned that the Arbitration Agreement "states that it is governed by and interpreted under the [FAA]" but "does not exclude jurisdiction for the arbitration under the [NMUAA,] a statute which applies to all arbitration agreements contracted within New Mexico." *Id.* at 162. Thus, unless this conclusion ignored the plain language of the parties' agreement, the arbitrator's award must stand.

### 1. The Terms of the Arbitration Agreement

Relying extensively on cases from other circuits, THI argues that the costs and interest award—which the arbitrator issued under the NMUAA—is "in direct contradiction to the Arbitration Agreement's plain language" such that he exceeded his powers under § 10(a)(4). Appellant's Br. at 11. THI argues that the Arbitration

---

arbitration. *See* Appellant's Reply Br. at 16-17 & n.12 (stating that "[THI] will remain true to its word" but advising that it "is *not* willing to pay those costs pursuant to the Award that is predicated on the NMUAA"); Appellee's Supp. App. at 21 n.2 ("Regardless of the arbitral forum/rules of the procedure that ultimately are used to administer the arbitration proceeding here, [THI] is agreeable to paying the administrative costs of arbitration.").

Agreement designates the FAA, not the NMUAA, as the governing law, and the FAA does not authorize the recovery of costs and interest by the prevailing party.

In assessing the Arbitration Agreement, "[w]e consider the plain language of the relevant provisions, giving meaning and significance to each word or phrase *within the context of the entire contract*, as objective evidence of the parties' mutual expression of assent." *H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 114 P.3d 306, 313 (N.M. Ct. App. 2005) (emphasis added). THI focuses only on one sentence: "This Agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16." Appellant's App. Vol. 1 at 43.

As a threshold matter, THI has not established that the FAA affirmatively *prohibits* an award of costs and interest—only that it does not expressly *authorize* one. Although the FAA displaces conflicting state law, *Preston v. Ferrer*, 552 U.S. 346, 353 (2008), state law is preempted only "to the extent that it actually conflicts with federal law" and "would undermine the goals and policies of the FAA," *Volt Info. Sciens., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477-78 (1989). We have previously recognized that the FAA and the NMUAA may apply to the same arbitration agreement so long as the NMUAA doesn't conflict with the FAA.[3] *See THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1169-70 (10th Cir. 2014). The Arbitration Agreement poses no such conflict.

---

[3] Ms. Lovato also points out that the arbitrator twice advised the parties that he understood that the NMUAA applied in the arbitration and that THI did not say otherwise. The arbitrator first informed the parties of his view in his January 22,

10

Two contractual terms support the arbitrator's award of costs and interest. First, as THI itself emphasized in moving to compel arbitration,[4] the Arbitration Agreement delegates broad authority to the arbitrator: "The parties agree that *all issues pertaining to the scope of this Agreement . . . shall be determined by the arbitrator*," Appellant's App. Vol. 1 at 43 (emphasis added), language that appears to include the determination of available legal and equitable remedies. "[C]ourts favor the arbitrator's exercise of . . . broad discretion in fashioning remedies." *Campo Machining Co. v. Local Lodge No. 1926*, 536 F.2d 330, 334 (10th Cir. 1976); *Bowen*, 254 F.3d at 939; *see also Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 818 (N.M. 2011) ("As a matter of law arbitrators have broad authority and are deemed capable of granting any remedy necessary to resolve a case."). "Parties who agree to submit matters to arbitration are presumed to agree that everything, both as to law and fact, necessary to render an ultimate decision is included in the authority of the arbitrators." *Ormsbee*, 668 F.2d at 1146.

---

2014 introductory letter and asked them to provide their "respective positions" if they disagreed with it. Appellant's App. Vol. 2 at 219. THI concedes it "did not formally respond to the Arbitrator's letter." Appellant's Br. at 4. From this silence, the arbitrator concluded that THI had impliedly "assented to the application of the [NMUAA] . . . . and its remedies." Appellant's App. Vol. 2 at 162. Later, during the arbitration proceeding, the arbitrator asked, "Well, we're under the Uniform Arbitration Act, right?" *Id.* at 222. Ms. Lovato's counsel responded, "We are." *Id.* THI's counsel did not respond.

[4] *See* Supp. App. at 34 ("Where, as here, an arbitration clause is drafted in broad terms, it is broadly construed.").

11

Second, the Arbitration Agreement directs that the National Arbitration Forum Code of Procedure (NAF Code) applies. *See* Appellant's App. Vol. 1 at 43 ("[T]he parties agree that [any] Dispute(s) shall be resolved by arbitration, as provided by the National Arbitration Forum Code of Procedure or other such association."). Rule 20 of the NAF Code allows an arbitrator to "grant any legal, equitable or other remedy or relief provided by law in deciding a Claim." NAF Code, Rule 20.D (2008). Also, under Rule 37, an arbitrator's final award "may include fees and costs . . . as permitted by law" if the party seeking them makes a timely request, though the opposing party has an opportunity to object. *Id.*, Rule 37.C; *see also id.*, Rule 37.D ("An Award may include arbitration fees awarded by an Arbitrator . . . .").[5] By referencing the applicable law, the NAF Code authorized the application of New Mexico law governing costs and interest.[6]

We acknowledge the parties did not arbitrate under the NAF Code, and the district court found they were not "[bound] . . . to follow the rules and procedures of the NAF." Appellant's App. Vol. 1 at 103. But the Arbitration Agreement's reference

_____

[5] We also note that Rule 12(A)(1) of the NAF Code contemplates that a claim may include "the specific amount and computation of any interest [and] costs." *Id.*, Rule 12(A)(1).

[6] Section 44-7A-22(b) of the NMUAA allows an arbitrator to award fees and expenses if authorized by law in a civil action. In civil actions, New Mexico law allows the costs and interest awarded by the arbitrator in this case. *See* N.M. R. Civ. P. for Dist. Cts. 1-054(d) (authorizing costs other than attorneys' fees for prevailing parties and describing recoverable costs); N.M. Stat. Ann. § 56-8-4(A)-(B) (authorizing pre- and post-judgment interest). Thus, the arbitrator had authority under New Mexico law, as incorporated by the NAF Code, to award costs and interest.

12

still shows that an award of costs and interest was within the realm of their agreement. *See* NAF Code, Rule 1.A ("This Code shall be deemed incorporated by reference in every Arbitration Agreement, which refers to . . . this Code of Procedure, unless the Parties agree otherwise.").

Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract." *Oxford Health Plans LLC*, 133 S. Ct. at 2070. Where, as here, the arbitrator's decision has "*any*" contractual basis, it should not be overturned under the deferential standard of review afforded to arbitration awards. *See id.* at 2069-70. Because the costs and interest award finds support in the terms of the Arbitration Agreement, the district court did not err in confirming it. *See, e.g.*, *San Juan Coal Co.*, 672 F.3d at 1201 (explaining that an arbitration award must be upheld if it has "at least some foundation in the text of the controlling agreements" and is based on a "defensible construction[] of the agreement").

## 2. Manifest Disregard of the Law

Finally, THI asks us to apply the judicially created manifest disregard of the law exception to vacate the arbitrator's costs and interest award. Again, we apply the required deferential standard of review. We assume (without deciding) the viability of that exception. For the reasons discussed above explaining why the arbitrator did not exceed his authority, we affirm the district court's conclusion that the arbitrator did not act in manifest disregard of the law. THI has presented no evidence showing the arbitrator's "willful inattentiveness to the governing law." *Dominion Video*, 430 F.3d at 1275

13

(quoting *ARW Expl. Corp.*, 45 F.3d at 1463). Nor has THI shown that the arbitrator "knew the law and explicitly disregarded it." *Bowen*, 254 F.3d at 932.

## IV

Under the restrictive standard of review applicable to this appeal, THI falls short of the exceptional showing required to upset the finality of arbitration. We affirm the district court's order confirming the arbitrator's award of costs and interest.